RENDERED:  DECEMBER 20, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1133-MR

GLENDA M. HAYDEN                                                         APPELLANT

v.                        APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE DIANE MINNIFIELD, JUDGE
ACTION NO. 22-CI-02107

INDIAN HARBOR INSURANCE
COMPANY                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE:  The appellant, Glenda Hayden, appeals the Fayette Circuit Court's August 28, 2023, order granting summary judgment to the appellee, Indian Harbor Insurance Company ("Indian Harbor"), and dismissing her claims against

that company with prejudice.[1]  Having reviewed the record and being otherwise

sufficiently advised, we affirm.

## I. BACKGROUND

The underlying facts are uncomplicated and largely undisputed.[2]

Hayden's claims against Indian Harbor arise out of a motor vehicle collision that

occurred in Lexington, Kentucky, on June 26, 2020.  On that date, while driving

near Tates Creek Road, Hayden's vehicle was struck by a vehicle owned by Suk

Khatiwoda and driven by Rai Purnima.  Hayden allegedly suffered serious injuries

in the accident, including multiple fractured bones.  According to Hayden's

complaint, neither Khatiwoda nor Purnima had a valid policy of automobile

---

[1]  Hayden's complaint alleged claims against several other defendants.  The circuit court's order addresses only Hayden's claim against Indian Harbor, and her claims against the other defendants remain pending before the circuit court.  Even though the order on appeal did not dispose of all the claims against all the parties, it is nevertheless appealable because it fully resolved  Hayden's claims against Indian Harbor and included the required finality language pursuant to Kentucky Rule of Civil Procedure (CR) 54.02. *Watson v. Best Financial Services, Inc*., 245 S.W.3d 722, 726 (Ky. 2008).

[2] Pursuant to Kentucky Rule of Appellate Procedure (RAP) 32(A)(3), appellate briefs must include "[a] statement of the case consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, ***with ample references to the specific location in the record supporting each of the statements contained in the summary***."  (Emphasis added.)  Hayden's appellate brief falls woefully short of the mark in this regard.  For example, it includes a detailed discussion of Hayden's alleged injuries and medical treatment without any citation to where that information appears in the record.  More troubling, Hayden attributes certain comments to the circuit court judge without providing a citation to where those comments can be located in the video record.  We have ignored Hayden's statement of the case to the extent it includes facts not supported by appropriate citations to the record.

liability insurance that would cover her injuries and property damage when the wreck occurred.

At the time of the collision, Hayden was working as a Lyft driver and was in the process of transporting two passengers to their requested destination.[3] Lyft had a Business Auto Policy in effect with Indian Harbor, which identified Lyft as the only named insured. Hayden asserts that the driver recruitment portion of Lyft's website advertised that the company provided uninsured/underinsured motorist bodily injury coverage for its drivers and that she relied on this fact.[4] However, after Hayden made an uninsured motorist claim with Indian Harbor, her claim was denied on the basis that Lyft had executed a written waiver of uninsured motorist coverage prior to Hayden's automobile accident.[5] Hayden asserts that neither Indian Harbor nor Lyft ever informed her about the waiver and, as a matter

---

[3] Lyft, like its well-known competitor Uber, is generally classified as a Transportation Network Company (TNC). A TNC is a business that connects passengers with drivers offering rides through a digital platform, typically a mobile app. *See* Kentucky Revised Statutes (KRS) 281.010(68) (defining a TNC).

[4] A review of screenshots from Lyft's website indicates that the portion of the materials indicating that Lyft provides insurance for uninsured/underinsured bodily injury when the driver has the app on and is transporting passengers is footnoted. The footnote states "[c]overage, where provided, may be modified to the extent allowed by law."

[5] In its appellate brief, Indian Harbor states that the waiver was "effective October 1, 2019." However, the signature page indicates that the waiver was executed by "CS" on "March 31, 2020." Regardless of which date is correct, it is undisputed that the waiver was executed prior to Hayden's motor vehicle accident.

of public policy, Indian Harbor should be obligated to provide uninsured coverage to her.

On July 22, 2022, Hayden filed a civil complaint against Khatiwoda, Purnima, Lyft, Indian Harbor, and Indian Harbor's third-party administrator, Constitution State Services.[6] Approximately a year later, Indian Harbor moved for summary judgment, arguing that since the policy's named insured, Lyft, executed a waiver of uninsured motorist coverage, it properly denied Hayden's claim. In response, Hayden acknowledged the waiver but argued it should not be effective in this case. She asserted that a literal reading of Kentucky's uninsured motorist statute, KRS 304.20-020, would allow TNCs, like Lyft, to strip coverage from drivers without their knowledge, violating Kentucky's strong public policy in favor of uninsured motorist coverage. Following briefing, the circuit court entered summary judgment in favor of Indian Harbor. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The

---

[6] Constitution State Services was later dismissed by an agreed order entered on August 24, 2023.

movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022). "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)).

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). The standard of review for an appellate court is *de novo* since only legal issues are involved. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020).

### III. ANALYSIS

Hayden's accident predates Kentucky's adoption of administrative regulations governing TNCs like Lyft. *See* 601 KAR[7] 1:113 (effective Jul. 6,

---

[7] Kentucky Administrative Regulations.

2021). Therefore, we must confine our review to Kentucky's uninsured motorist statute, KRS 304.20-020, and apply the facts of this case without reference to the new regulation.[8]

"Uninsured motorist insurance provides coverage for accidents involving motorists who do not carry insurance on their vehicles." *State Farm Mut. Auto. Ins. Co. v. Baldwin*, 373 S.W.3d 424, 429 (Ky. 2012). KRS 304.20-020(1) provides:

> No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39-110 under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; ***provided that any named insured shall have***

---

[8] Suffice it to say, the KAR, even if applicable, would not materially change the outcome of this appeal. As it relates to this appeal, the regulation simply indicates that the uninsured motorist statute, KRS 304.20-020, applies to a TNC as it would to any other driver. Specifically, 601 KAR 1:113, Section 3(4)(c) provides that when a TNC driver is in the process of a prearranged ride uninsured vehicle coverage shall apply "in accordance with KRS 304.20-020." In other words, as related to uninsured motorist coverage, the regulation does not impose any special requirements for either TNCs or the insurance companies who insure them. *See also Rogers v. Erie Insurance Exchange*, 688 S.W.3d 527, 533 (Ky. App. 2024) (holding that similarly worded administrative regulation did not mandate underinsured motorist coverage during a prearranged ride; such coverage only had to be provided, if specifically requested by the named insured pursuant to KRS 304.39-320).

> ***the right to reject in writing such coverage; and provided further that the rejection shall be valid for all insureds under the policy, and unless a named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal, reinstatement, substitute, replacement, or amended policy issued to the same named insured by the same insurer or any of its affiliates or subsidiaries.***

(Emphasis added.) The statute "mandates that all automobile liability insurance policies issued in this state shall include uninsured motorist coverage providing limits of coverage as set forth in KRS 304.39-110 unless such coverage is rejected in writing by [a named] insured." *Kentucky Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 689 S.W.2d 32, 34 (Ky. App. 1985).

The Indian Harbor policy was issued to Lyft, and Lyft is the only named insured listed on the policy. Pursuant to KRS 304.20-020(1), Indian Harbor was obligated to provide uninsured motorist benefits as part of the business automobile insurance policy it issued to Lyft *unless* such coverage was rejected in writing by a named insured. In this case, Indian Harbor produced an executed waiver it purports was executed on Lyft's behalf. Hayden failed to produce any evidence sufficient to show that the waiver was executed by someone who did not have the authority to bind Lyft. Given that the named insured, Lyft, rejected uninsured motorist coverage in writing and prior to the accident at issue, we hold that Indian Harbor properly denied Hayden's claim.

We are not blind to Hayden's public policy arguments. However, where the law is clear, as it is in this case, we are bound to follow it. We cannot rewrite statutes in the name of public policy alone. *See Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000) ("We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used."). That is a job for our General Assembly. If the General Assembly believes that TNCs have an obligatory duty to provide uninsured motorists benefits for their drivers or to notify their drivers of the rejection of such coverage, it is certainly capable of requiring them to do so. As the law now stands, however, we must treat TNCs and the companies who insure them like all other insureds and insurers.

This brings us to Hayden's argument that she was not provided with any notice from Indian Harbor regarding Lyft's rejection. The statute does not require insurance companies to provide notice when coverage is rejected by a named insured. In fact, as already discussed, the statute, as recently revised, states that a written rejection executed by single named insured shall be effective as to all insureds.

Hayden also named Lyft as a defendant in her suit, and her claims against it remain pending before the circuit court. Whether Lyft breached some promise made to its drivers or misrepresented the scope of its coverage are

questions not before us today. Certainly, there could be factual scenarios where a driver, like Hayden, might be able to allege a cognizable claim against Lyft. *See Ahtasham v. Lyft Inc*., No. CV 24-1673, 2024 WL 4173782, at *4 (E.D. Pa. Sep. 12, 2024)[9] ("Ahtasham's allegation that Lyft breached the Guidebook's clear promise of UM/UIM coverage is sufficient to plausibly state a claim for breach of contract."). Whether Hayden has alleged such a claim under the facts as they exist in this case, is a separate issue and one that is not yet ripe.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Julianne H. Tackett
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael P. Casey
Sarah E. Boggs
Lexington, Kentucky

---

[9] Pursuant to RAP 41(B), we cite to this unpublished, out-of-state opinion for illustrative purposes only, recognizing that it is in no way binding.